IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROBERT WOODROFFE,

        Plaintiff,

   v.

OREGON DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.

No. CV 05-977-MO

OPINION AND ORDER


**MOSMAN, J.**,

    Robert Woodroffe, an inmate in the care and custody of the Oregon Department of Corrections ("ODOC"), alleges the defendants: (1) violated his Eighth Amendment rights; (2) denied him treatment under the "dangerous offender" laws; (3) violated his Fourteenth Amendment rights; and (4) denied him access to the courts. Mr. Woodroffe filed a Motion for Partial Summary Judgment (#110), and the defendants filed a Motion for Summary Judgment (#127). I GRANT IN PART and DENY IN PART the defendants' Motion for Summary Judgment. I GRANT summary judgment on every claim except one of Mr. Woodroffe's Eighth Amendment claims—the claim based on his hernia treatment. I DISMISS Mr. Woodroffe's Motion for Partial Summary Judgment (#110) as moot.

**BACKGROUND**

Mr. Woodroffe's 42 U.S.C. § 1983 lawsuit alleges twelve claims for relief, which can be categorized as follows:

(1) Eighth Amendment violations for inadequate medical treatment of his hernia, leg pain, stomach bacteria, and mental health. (Am. Compl. (#22) Claims 1, 2, 4, 6-9.)

(2) Denial of "dangerous offender" treatment. (*Id.* Claim 11.)

(3) Fourteenth Amendment due process violations relating to disciplinary hearings and his hearing before the Board of Parole and Post-Prison Supervision ("Board of Parole"). (*Id.* Claims 3, 5, 10, 11.)

(4) Denial of access to the courts. (*Id.* Claim 12.)

Mr. Woodroffe names the ODOC, the Board of Parole, and forty individuals as defendants.

The defendants filed a Motion for Summary Judgment (#127) on July 11, 2007. They argue the claims against the ODOC, the Board of Parole, the Board of Parole members, and Max Williams, an individual defendant, should be dismissed. They also argue: (1) there is no evidence of an Eighth Amendment violation; (2) Mr. Woodroffe has access to "dangerous offender" treatment; (3) there is no evidence of a due process violation; and (4) Mr. Woodroffe has access to the courts.

**DISCUSSION**

**I.** **Standard**

Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the record in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986). If the movant initially shows that no genuine issue of fact exists for trial, the non-moving party cannot then rest on the pleadings but must respond with evidence setting "out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party has the "burden of advertising to 'specific facts showing that there is a genuine issue for trial.' . . . It is not the district court's job to sift through the record to find admissible evidence in support of a non-moving party's case."[1] *Claar v. Burlington N. R.R.*, 29 F.3d 499, 504 (9th Cir. 1994) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## II.     Claims Against the ODOC, the Parole Board, and the Parole Board Members

The Eleventh Amendment bars Mr. Woodroffe's claims against the ODOC and the Board of Parole. The Amendment bars suits against states or state agencies in federal court unless immunity is waived by the state or abrogated by Congress. U.S. Const. amend. XI; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment . . . ."). Here, neither the ODOC nor the Board of Parole have consented to suit in federal court. I therefore dismiss the claims against them.

Mr. Woodroffe's claims against individual Parole Board members also fail. These claims relate exclusively to his release date. Parole Board members, however, have absolute immunity

---

[1] Mr. Woodroffe submitted thousands of pages of exhibits. He has the burden of identifying specific facts in those exhibits; I am not required to sift through them in search of facts to support his case.

when making decisions to grant, deny, or revoke parole. *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004). Thus, I dismiss Mr. Woodroffe's claims against Michael Washington, Darcey Baker, and Lenn Hannon.

### III.     Claim Against Max Williams

Mr. Woodroffe names Max Williams, the director of the ODOC, as a defendant. Under § 1983, however, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). In his court filings, Mr. Woodroffe has not identified any evidence that Mr. Williams participated in or directed, or knew of and failed to prevent the alleged constitutional violations. I therefore dismiss the claims against Mr. Williams.

### IV.     Eighth Amendment Claims

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To prevail on an Eighth Amendment claim based on inadequate medical care, a plaintiff must show (1) the medical treatment was medically unacceptable and (2) the treatment provider acted with deliberate indifference. *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. It is a "conscious disregard of an excessive risk to [a] plaintiff's health." *Jackson*, 90 F.3d at 332; *see also Farmer*, 511 U.S. at 836.

PAGE 4 OPINION AND ORDER

A.     *Hernia Treatment*

On August 29, 2003, Mr. Woodroffe was diagnosed with an umbilical hernia. It was tender, but reduced easily. (*See* Shelton Aff. (#127) ¶¶ 61-63.) Mr. Woodroffe was eventually restricted to lifting fifty pounds and assigned to a lower bunk. On April 13, 2004, he requested hernia surgery. (*Id.* ¶ 67.) The request was denied; the Therapeutic Level of Care Committee suggested "watchful waiting" and instructed him to report the first sign of incarceration. (*Id.*) Over the course of the next three years, Mr. Woodroffe reported: (1) he was able to reduce the hernia, but with pain and sometimes difficulty; and (2) he wanted it repaired. (*Id.* ¶¶ 67-105.) His hernia was eventually repaired on October 4, 2007, more than two years after the filing of this lawsuit. (Vargo Aff. (#161) ¶ 3.)

The defendants argue Mr. Woodroffe's "condition . . . [was] not a serious health condition . . . . Many individuals in the community have this condition and elect not to obtain surgical repair." (Def.'s Mem. in Supp. Summ. J. (#128) 5.) They argue Mr. Woodroffe cannot establish deliberate indifference because "[p]hysicians and nurse practitioners have been diligent in assessing and attending to plaintiff's medical needs." (*Id.*) They also point out that Mr. Woodroffe's hernia was successfully repaired. (Def.'s Reply in Supp. Summ. J. (#161) 1.)

Mr. Woodroffe argues summary judgment on this claim is inappropriate in light of *Delker v. Maass*, 843 F. Supp. 1390 (D. Or. 1994). In *Delker*, Judge Panner ruled that a prison official's delay in repairing David Delker's hernia for almost two years violated the Eighth Amendment. Mr. Delker "reported a lot of activity-related discomfort" because of his hernia. *Id.* at 1394. When Mr. Delker requested surgery, he was told: "Health Services does not cover elective procedures. We cover *medically necessary* procedures." *Id.* After a court trial, Judge Panner

PAGE 5 OPINION AND ORDER

found Mr. Delker suffered pain, anxiety, and restricted activity.  *See id.* at 1395-96.  Furthermore, the defendant "made a deliberate decision to withhold surgery, even though medical professionals agree that surgical repair is the standard treatment for an inguinal hernia . . . ."  *Id.* at 1401.  Judge Panner concluded the defendant was deliberately indifferent to Mr. Delker's serious medical needs.  *Id.*

Mr. Woodroffe's claim is very similar to that in *Delker*, and summary judgment on it is inappropriate.  First, Mr. Woodroffe may have had a serious medical need.  "An injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are indications that a prisoner has a 'serious' need for medical treatment."  *Id.* at 1399.  In this case, Mr. Woodroffe says: "I was still in pain off and on, and scared I die [sic] at times as it wouldn't push in . . . ."[2]  (Woodroffe Decl. (#156) 11.)  His hernia was also "quite symptomatic for activity related discomfort."  (Vargo Aff. (#161) Attach. 1, p. 4.)  Mr. Woodroffe's discomfort, pain, and suffering may have indicated a serious medical need.

Second, Mr. Woodroffe may have received inadequate medical advice and treatment.  "[P]hysicians in private practice will generally counsel surgery to repair a routine hernia . . . ."  (Shelton Aff. (#127) ¶ 13.)  "[It] is the standard surgical party line that all routine . . . hernias like plaintiff's should be repaired by surgery."  *Delker*, 843 F. Supp. at 1396 (quoting a witness).  Here, the defendants argue "ODOC does not routinely pay for the repair of small uncomplicated

---

[2] Mr. Woodroffe seems to be referring to his inability to reduce the hernia, which indicates his hernia may have been more serious than the defendants contend.

PAGE 6 OPINION AND ORDER

hernias," and Mr. Woodroffe could have purchased the elective surgery. (Def.'s Mem. in Supp. Summ. J. (#128) 5-6.) However, the defendants do not identify evidence that Mr. Woodroffe was counseled to have surgery. This may indicate the medical advice and treatment were inappropriate or dictated by budgetary constraints. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986) ("Budgetary constraints, however, do not justify cruel and unusual punishment.").

Third, because they delayed surgery for more than three years, the defendants may have been deliberately indifferent to Mr. Woodroffe's serious medical needs. Mr. Woodroffe consistently reported pain and discomfort. More than one year before his hernia was repaired, he told a nurse: "I think I can feel it tearing sometimes inside there." (Shelton Aff. (#127) ¶ 98.) The defendants do not explain why, more than a year after this comment, surgery was suddenly necessary. Absent any explanation and in the light most favorable to Mr. Woodroffe, this may indicate the defendants were deliberately indifferent to his condition. *See Delker*, 843 F. Supp. 1390 (finding deliberate indifference when hernia surgery was delayed for almost two years).

In sum, there are factual questions about Mr. Woodroffe's hernia treatment. There are questions about (1) whether he had a serious medical need, (2) whether he received appropriate medical advice and treatment, and (3) whether the defendants were deliberately indifferent to his serious medical need. Therefore, I deny the defendants' Motion for Summary Judgment on this claim.

  B.  *Leg Pain*

In early 2002, Mr. Woodroffe began to complain of numbness and pain in his leg. Tests were inconclusive, and Health Services prescribed medication to make him more comfortable. In July 2005, Mr. Woodroffe's medication was discontinued because no medical evidence existed to

PAGE 7 OPINION AND ORDER

require it.  He then demanded more medication, but was denied.  Since July 2005, Mr. Woodroffe has not mentioned his leg pain to Health Services again.  Mr. Woodroffe does not identify any evidence that suggests (1) his medical treatment was medically unacceptable and (2) the treatment providers acted with deliberate indifference to his leg pain.  I therefore grant summary judgment on this claim.

      C.    *Stomach Bacteria*

In April 2004, Mr. Woodroffe tested positive for h pylori bacteria, which allows stomach acid to attack the stomach's lining.  He was prescribed several medications.  The treatment was successful.  Mr. Woodroffe does not identify any evidence that suggests (1) his medical treatment was medically unacceptable and (2) the treatment providers acted with deliberate indifference to his stomach problems.  I therefore grant summary judgment on this claim.

      D.    *Mental Health Treatment*

Mr. Woodroffe alleges: (1) the mental health facility is short-staffed; (2) he was given inappropriate medication; and (3) staff missed scheduled appointments with him.  (Am. Compl. (#22) ¶¶ 120-23, 184-86.)  Mr. Woodroffe also thinks he should receive particular medications; however, a mere disagreement about treatment alternatives does not constitute an Eighth Amendment violation.  *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  Mr. Woodroffe does not otherwise identify any evidence that suggests (1) his mental health treatment was medically unacceptable and (2) the treatment providers acted with deliberate indifference to his mental health.  I therefore grant summary judgment on this claim.

**V.**    **"Dangerous Offender" Treatment**

Mr. Woodroffe alleges he has not received the treatment envisioned by the "dangerous

offender" statute under which he was convicted. (*See* Am. Compl. (#22) ¶¶ 158, 160.) His claim is apparently based on Oregon Revised Statute § 421.155.[3] Section 421.155 states: "Any person sentenced [as a dangerous offender] shall be given such physical, mental and psychiatric observation and treatment as is available . . . ." Or. Rev. Stat. § 421.155; *see also DeBolt v. Cupp*, 522 P.2d 1395 (Or. Ct. App. 1974) (stating an inmate was entitled to available programs and unavailability of programs for ten years was not grounds for release).

Mr. Woodroffe does not identify evidence that could support a claim under § 421.155. He has access to many ODOC programs and treatment options. (Atkins-Mackey Aff. (#127) ¶ 13.) Because § 421.155 requires access only to available treatment options, *see DeBolt*, 522 P.2d 1395, I grant summary judgment on this claim.

## VI.   Due Process Claims

A disciplinary hearing must provide an inmate procedural protections. The required procedural protections are: (1) written notice of the charges at least 24 hours before the hearing; (2) a hearing before an impartial tribunal; (3) a limited opportunity to call witnesses and present documentary evidence; and (4) a written statement addressing the reasons for any decision and/or charges. *Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974). Furthermore, a prison disciplinary decision must be supported by "some evidence" to meet the requirements of due process. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

Mr. Woodroffe alleges numerous problems with several disciplinary sanctions he received. He alleges the planting of evidence, the destruction of evidence, and several

---

[3] The defendants argue there is no private right of action under § 421.155. Although they may be correct, I assume there is for the purposes of their Motion for Summary Judgment.

conspiracies. The defendants point out that Mr. Woodroffe had the opportunity to present his theories of the cases during disciplinary hearings, and one hearing was actually adjourned until Mr. Woodroffe's suggested witnesses could be interviewed. Mr. Woodroffe does not identify evidence that disputes the defendants' position or that suggests his rights, as outlined by *Wolff*, were violated. Mr. Woodroffe also does not identify evidence indicating the disciplinary decisions were not supported by "some evidence." Because Mr. Woodroffe has not met his burden, I grant summary judgment on his due process claims.

## VII.  Access to the Courts

Mr. Woodroffe alleges Maureen Rossi caused him to miss court deadlines. (Am. Compl. (#22) ¶ 165.) To establish a constitutional violation, Mr. Woodroffe must demonstrate an actual injury to an actual case. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996). He does not identify an actual injury to any case. Thus, I grant summary judgment on this claim.

## VIII.  Qualified Immunity

The defendants argue they are qualifiedly immune from liability. The Ninth Circuit has a two-part analysis for determining officials' qualified immunity: "(1) Was the law governing the official's misconduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Neely v. Feinstein*, 50 F.3d 1502, 1507 (9th Cir. 1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.")).

Mr. Woodroffe's only remaining claim is his Eighth Amendment claim based on his hernia treatment, and the defendants are not qualifiedly immune from liability on that claim. First, Mr. Woodroffe's Eighth Amendment right to adequate medical treatment is clearly

PAGE 10 OPINION AND ORDER

established.  *See, e.g.*, *Estelle*, 429 U.S. 97 (discussing a prisoner's Eighth Amendment right to adequate medical treatment).  Furthermore, his rights, as they relate specifically to hernia treatment, were outlined in *Delker*, 843 F. Supp. 1390.

Second, there is no qualitative difference between the unlawful policy at issue in *Delker* and the defendants' current position.  In *Delker*, Judge Panner stated: "A reasonable public official would have known that there are circumstances in which the Eighth Amendment requires prison officials to pay for 'elective' surgery to repair a hernia, and that a categorical refusal to repair unincarcerated hernias violates the Eighth Amendment."  *Id.* at 1397.  Here, the defendants submitted Dr. Steve Shelton's affidavit, which states the following:

> If a hernia becomes incarcerated, the patient will experience discomfort and seek medical attention.  Many times the hernia will reduce when the patient lies down and relaxes.
>
> . . . [O]f patients whose umbilical hernia is incarcerated, less than two percent (2%) of that number will have a strangulated hernia.  "Strangulated" means that tissue protrud[ing] through the weakening of the deep tissue closure is trapped, and the blood flow from inside to outside the tissue is impeded.  It takes about six (6) to eight (8) hours for a hernia to strangulate, if it is going to strangulate.  This is ample time within which to identify that difficulty and perform surgery. . . .
>
> In a correctional facility, there is no realistic risk that a hernia could strangulate.  If a hernia cannot be reduced, a patient would seek medical attention long before there would be a risk of strangulation. . . .
> . . . .
> There is no 'de facto' policy . . . that umbilical hernias will not be surgically repaired.  Each is reviewed on a case by case basis.

(Shelton Aff. (#127) ¶¶ 50-52, 57.)  The factual dispute Mr. Woodroffe raises is whether, despite an official policy of case by case review, there is a *de facto* policy of never, or almost never, paying for elective surgery to repair a hernia.  Dr. Shelton's description of delaying hernia surgery

PAGE 11 OPINION AND ORDER

until a hernia becomes strangulated is not constitutionally adequate to support qualified immunity.

Such an approach is not constitutionally adequate because an inmate could experience pain and suffering prohibited by the Eighth Amendment. In *Delker*, Judge Panner explained:

> [The defendant] was fully aware of plaintiff's injury, knew plaintiff was suffering pain and anxiety as a result of that injury, knew an operation to repair the hernia would likely alleviate plaintiff's symptoms, and knew plaintiff had repeatedly requested such an operation, but nonetheless refused to provide appropriate medical treatment . . . . No reasonable public official would believe this conduct was lawful.

*Delker*, 843 F. Supp. at 1398. Here, viewing the facts in the light most favorable to Mr. Woodroffe, the defendants were aware of his injury; they knew he was suffering discomfort, pain, and anxiety; they knew his hernia was quite symptomatic; they knew he had problems reducing it (a sign of possible incarceration); they knew an operation would alleviate his symptoms; and they knew he had requested surgery. Nonetheless, they refused to provide surgery for over three years. In fact, Mr. Woodroffe's allegations would suggest that the total ban on surgery that Judge Panner found violated the Eighth Amendment is still fundamentally in place. The only exception to the ban is so narrow as to amount to a *de facto* ban. Again, in the light most favorable to Mr. Woodroffe, the defendants could not have reasonably believed this conduct was lawful. The defendants therefore are not qualifiedly immune from liability on Mr. Woodroffe's remaining Eighth Amendment claim.

## CONCLUSION

Based on the foregoing, I GRANT IN PART and DENY IN PART the defendants' Motion for Summary Judgment (#127). Mr. Woodroffe's only remaining claim is his Eighth

PAGE 12 OPINION AND ORDER

Amendment claim based on his hernia treatment.

## MR. WOODROFFE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Based on the foregoing, I DISMISS Mr. Woodroffe's Motion for Partial Summary Judgment (#110) as moot.

## MOTION TO RECONSIDER

Mr. Woodroffe filed a Motion to Reconsider (#159) my ruling granting in part his Motion for Extension of Time (#149) to respond to the defendants' Motion for Summary Judgment. He argues he would be able to submit a proper memorandum if he had more time. The defendants filed their Motion for Summary Judgment (#127) on July 11, 2007. After four extensions, Mr. Woodroffe filed his response on March 25, 2008. Because (1) Mr. Woodroffe had over six months to respond to the defendants' motion and (2) he filed a response to their motion, I DENY his Motion to Reconsider (#159).

## APPOINTMENT OF COUNSEL

I also note that Mr. Woodroffe again raises the issue of appointing counsel. (*See* Objection to Defs.' Reply in Supp. Summ. J. (#162).) I invite Mr. Woodroffe to file a formal motion for appointment of counsel to help him with his remaining claim.

IT IS SO ORDERED.

DATED this  27th  day of May, 2008.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

PAGE 13 OPINION AND ORDER